## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS
### AT KANSAS CITY

SUSAN NORWOOD,         )
                            )
          **Plaintiff,**        )
                            )
**v.**                           )   **Case No. 2:19-cv-02496-DDC-JPO**
                            )
**UNITED PARCEL SERVICE, INC.,**  )
                            )
          **Defendant.**     )

## DEFENDANT UNITED PARCEL SERVICE, INC.'S RESPONSES TO PLAINTIFF'S FIRST INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS

Defendant United Parcel Service, Inc. ("UPS"), by and through counsel, provides the following responses to Plaintiff's First Set of Interrogatories and Request for Production of Documents ("Plaintiff's Discovery").

### ANSWERS AND OBJECTIONS TO INTERROGATORIES

**INTERROGATORY NO. 1:** Please identify each person whom you are aware of with knowledge of the facts and circumstances involved in Ms. Norwood's request for accommodation and separation from employment.

**OBJECTION: UPS objects to the extent this Interrogatory seeks information protected by the attorney-client privilege.**

**ANSWER: UPS directs Plaintiff to its initial disclosures made pursuant to Fed. R. Civ. P. 26, which were provided to Plaintiff on December 12, 2019 and identify individuals expected to have knowledge about Plaintiff's requests for accommodations and voluntary retirement. In addition to the individuals identified in its Rule 26 disclosures, UPS believes the following individuals may also possess knowledge about Plaintiff's accommodation request(s) and retirement:**



- **Jimmy McClure, Current District Human Resources Operations Manager – Central Plains District for UPS.**

- **Gayle Narimatsu, Current Human Resources Center Occupational Health Services for UPS.**

- **Stan Roux, Current Director for the Central US Employee Relations.**

- **Terra Vellema, Current Zone Occupational Health Manager for the Central Plains District for Defendant.**

- **Eric Day, Current Area Human Resources Manager for the West Central Division for Defendant.**

**INTERROGATORY NO. 2**:  Please identify by date each request for accommodation Ms. Norwood made, stating why you refused to agree to each such request and identifying each such person who will support your denial for each such request.

**OBJECTION: UPS objects to this Interrogatory as argumentative and overly broad.  Further, it seeks information that is not relevant to the claims and defenses in this case as it is unlimited in temporal scope. Plaintiff worked for UPS for more than 30 years, in different capacities and locations.  UPS further objects to the term "accommodation" to the extent Plaintiff's characterization of this term conflicts or differs from definition of "accommodation" under the ADA. UPS also objects to the extent this Interrogatory seeks information protected by the attorney-client privilege and/or work product doctrine.**

**ANSWER:  Based on its investigation to date and its understanding of the term accommodation under the ADA, UPS states: On or about March 29, 2018, Plaintiff made a request for accommodation, seeking a request for an agenda of meetings and well as the**

ability to tape record in the workplace. Thereafter, UPS provided Plaintiff with a packet of information she needed to make her request, which included medical forms to be completed by Plaintiff and her physician. Despite e-mails to Plaintiff following up on her request, as of April 30, 2018, Plaintiff had not submitted completed medical forms, and so UPS was unable to complete the process for her request at that time. When UPS received a copy of the completed medical forms in early June 2018, Plaintiff was on continuous medical leave, but planned to return to work on June 11, 2018. On June 11, 2018, Plaintiff contacted UPS and said she did not plan to return to work without the requested accommodations. On June 15, 2018, UPS reached out to Plaintiff to set an accommodation checklist meeting with her to discuss her requests for accommodations and return to work.

On June 19, 2018, Plaintiff, Eric Day, Gayle Narimatsu, and Jimmy McClure attended an accommodations checklist meeting to discuss Plaintiff's requested accommodations. Plaintiff represented that she was recording this meeting, and was allowed to do so for that limited purpose. During that meeting, Plaintiff completed an accommodation checklist form with information about her requests for accommodation. Plaintiff also requested a copy of the paperwork she completed during the meeting, which UPS provided to her at the end of the meeting.

UPS explained to Plaintiff that she could not record meetings and conversations in the workplace because: UPS's policies prohibit employees from recording in the workplace; and, given the nature of Plaintiff's high-level division manager position, she was privy to confidential and propriety that needed to be safeguarded. UPS also explained to Plaintiff that it wanted to work with Plaintiff to arrive at a solution to allow her to return to work and do her job. Specifically, in June 2018, Eric Day corresponded with

Plaintiff and asked her for additional information about Plaintiff's requests in order to find a solution that would allow Plaintiff to return to work. In particular, Mr. Day sought clarification about the specific meetings for which she was requesting an agenda. Plaintiff never provided the requested information.

UPS also offered alternative options (to tape recording) that it thought may have reasonably accommodated Plaintiff's condition. These options included designating a note-taker in meetings, and allowing note-taking at her performance review meetings by all parties present, including Plaintiff, that could be reviewed or compared for completeness and consistency. However, Plaintiff insisted UPS accommodate her with her accommodation request to record in the workplace and receive meeting agenda; she would not engage in the interactive process by providing additional information to assist in finding a solution that would allow her to return to work.

UPS provided Plaintiff with paid leave from mid-June 2018 through mid-July 2018 while UPS worked with her during the accommodation process.

On July 12, 2018, Plaintiff's attorney, Luther Sutter, emailed UPS personnel indicating that Plaintiff was in inpatient treatment, and that Plaintiff wanted all communications directed to Mr. Sutter. Mr. Sutter stated that Plaintiff had asked him to pursue severance, and, absent an appropriate severance package, she intended to retire. While UPS was engaging in the interactive process with Plaintiff, it had to cease that process and stop communicating with Plaintiff at Mr. Sutter's directive.

In the summer of 2018, Plaintiff left voicemail messages for UPS about continuing disability leave due to a shoulder surgery. Plaintiff was approved for the requested continuous leave. During that same time period, Plaintiff left voicemail messages with HR

indicating she wished to retire. Consistent with that request, UPS provided Plaintiff with retirement paperwork.

Based on Plaintiff's notice of her intent to retire, UPS quit holding the division manager position open. Thereafter, Plaintiff began telling HR she was "forced" to retire. UPS told Plaintiff that was not the case and that if Plaintiff wanted UPS to stop the retirement request, they could do so. UPS also offered to resume the interactive dialogue with Plaintiff and her a position for which she was qualified.

Instead of engaging in discussions that perhaps could have allowed Plaintiff to return to UPS in a different role, Plaintiff continued to focus on why UPS would not give her the accommodation of her choice for the division manager position. On November 28, 2018, UPS told Plaintiff there was no point in rehashing the accommodations for the position she once held, and said "tell us what you want us to do, Susan. Do you want us to look for other positions for which you're qualified?" Plaintiff did not answer the question. On December 10, 2018, Plaintiff told HR she would be continuing therapy for six weeks and that she was still unable to return to work.

On January 23, 2019, Plaintiff told UPS she was requesting a retirement date of February 5, 2019. On February 4, 2019, Plaintiff called HR and said she needed another surgery with a follow up appointment eight weeks away. UPS thanked Plaintiff for the update and postponed her retirement date until April 1, 2019.

Plaintiff sought and was approved for continuous medical leave (in the form of short-term disability and long-term disability) between March 2018 and April 2019. Plaintiff sought and was approved for extensions of this continuous leave several times during this almost 13-month period. Ultimately, Plaintiff was approved for medical leave

continually from late March 2018 until the date of her retirement on April 1, 2019. Plaintiff did not return to work in any capacity between late March 2018 and her retirement on April 1, 2019.

With regard to the request for the identities of individuals who UPS may rely on for the issues about Plaintiff's requests for accommodations, UPS directs Plaintiff its answer to Interrogatory No. 1, which identifies individuals expected to have knowledge about Plaintiff's requests for accommodations.

Additionally, pursuant to Fed. R. Civ. P. 33(d), UPS directs Plaintiff to: UPS 000006-21; UPS 000105-536; UPS 0000504-604; UPS 0000953-954; UPS 0000956; UPS 000961-962; UPS 001002-1003; UPS 001013-1014; UPS 001017-1019; UPS 001085-1117; UPS 001119-1127; UPS 00132-1139; UPS 001145-1147; UPS 001175-1176; UPS 001252; UPS 001254-1275; UPS 001278-1295; UPS 001302-1305; UPS 001314-1320; UPS 001326-1329; UPS 001596-1597; UPS 001599-1614; UPS 001637-1645; UPS 001652-1657; UPS 001750-1772; UPS 001774-1838; UPS 002929-2933; UPS 002963.

**REQUEST FOR PRODUCTION NO. 1:** For each request identified in the preceding interrogatory, state whether any other UPS employee in the Central Plains District as it was constituted during Plaintiff's employment with UPS, ever requested the accommodations identified in the preceding interrogatory or similar request. If not, why not? If so, why?

**OBJECTION:** UPS objects to this Request as an improper request for production; instead, this appears to be an Interrogatory seeking information, as opposed to documents. In addition, UPS objects to this Request/Interrogatory as vague, as it cannot ascertain what documents/information Plaintiff seeks. More specifically, the preceding Interrogatory did

not ask for a description of the accommodations requested by Plaintiff, and therefore UPS cannot ascertain the specific information sought by Plaintiff. For example, as stated above, Plaintiff requested continuous medical leave, which UPS provided until her retirement. If Plaintiff is seeking information about other employees who requested continuous medical leave as an accommodation, UPS objects to such a request as overly broad, unduly burdensome, and not relevant to the claims and defenses in this case. This is particularly true given that this Request/Interrogatory is unlimited in temporal scope. It would be impossible for UPS to provide every request for continuous medical leave by every current or former employee from the Central Plains District since the formation of that District. For the same reasons, Plaintiff's request for "similar requests" is overly broad and unduly burdensome, in addition to being vague because UPS cannot determine what Plaintiff means by this term. UPS further objects to the term "accommodation" to the extent Plaintiff's characterization of this term conflicts or differs from definition of "accommodation" under the ADA.

Moreover, this Request/Interrogatory is overbroad in that it is not limited to similarly situated individuals, i.e. employees who were manager-level employees who had access to confidential and proprietary information. Not all of UPS employees are managers who have access to confidential and proprietary information during meetings; during the relevant timeframe, Plaintiff was a high-level manager who had access to such information. This Request/Interrogatory is more appropriately limited to other division manager-level employees who requested an accommodation to tape record meetings, and/or requested to receive a meeting agenda within the last five years. Finally, UPS objects to the phrases "If not, why not?" and "If so, why?" as vague and confusing because this

Request/Interrogatory does not ask for any reasoning about requested accommodations. Therefore, UPS cannot ascertain the information sought by these phrases.

**RESPONSE:** UPS states that Plaintiff requested to tape record meetings, and receive meeting agendas, as an accommodation. UPS directs Plaintiff to its answer to Interrogatory No. 2 for information about Plaintiff's accommodation requests and UPS's responses to the same. Aside from Plaintiff's requests, UPS states that, based upon its investigation to date, it is unaware of any other division manager-level employee who worked in the Central Plains District who in the last five years made a request for accommodation to tape record meetings, and/or receive a meeting agenda.

**INTERROGATORY NO. 3:** Please identify each person with knowledge of each request for accommodation identified above.

**OBJECTION:** UPS objects to this Interrogatory as vague, as UPS cannot ascertain the information this Interrogatory seeks. To the extent Plaintiff is seeking information about the requests for accommodation sought in Request for Production No. 1, UPS incorporates its objections to that Request. To the extent Plaintiff is seeking information about Plaintiff's requests for accommodations, UPS incorporates its objections to Interrogatories No. 1 and 2. Additionally, UPS further objects to this Request/Interrogatory to the extent it seeks personal and/or employment information of non-parties, specifically its former and/or current employees, that is confidential and personal to the individuals involved, and Plaintiff's discovery of such information may infringe on the privacy rights of these individuals or expose them to annoyance, embarrassment, or oppression.

8

**ANSWER:**  UPS incorporates its answers to Interrogatories No. 1 and 2, and its response to Request for Production No. 1.

**INTERROGATORY NO. 4:**  Have you ever allowed any UPS employee to tape-record, any meetings, held in Arkansas/Kansas/Missouri, since January 1, 2005?

**OBJECTION:**    UPS objects to this Interrogatory as overly broad, unduly burdensome, and not relevant to the claims and defenses in this case. In particular, this Interrogatory seeks information that is outside the timeframe relevant to this case, and exceeds the geographic scope of this case. UPS also objects to the temporal scope because Plaintiff's claims pertain to her time working as the Division Manager for the West Central Division of the Central Plains District. She began working as the Division Manager for the West Central Division in 2016, and information pre-dating her time working there as the Division Manager by 11 years is not relevant to the claims and defenses in this case. Additionally, this Interrogatory is overbroad in that it is not limited to similarly situated individuals, i.e. employees who were division manager-level employees in the Central Plains District. Not all of UPS employees are high-level managers who have access to confidential and proprietary information during meetings; during the relevant timeframe, Plaintiff was a high level manager who had access to such information. This Interrogatory is more appropriately limited to other division manager-level employees who requested an accommodation to tape record meetings, and/or requested to receive a meeting agenda where confidential and/or proprietary information was discussed within the last five years.

**ANSWER:**    UPS states that Plaintiff represented that she was recording her accommodation checklist meeting, and was allowed to do so for that limited purpose. Other

9

than this instance with Plaintiff, and based upon its investigation to date, UPS is unaware of any other division manager-level employee who worked in the Central Plains District and who in the last five years made a request to tape record meetings where confidential and/or proprietary information was discussed. By way of further response, UPS states that its policies prohibit employees from recording in the workplace.  UPS may allow employees to record innocuous meetings where confidential and propriety information is not discussed, such as training sessions for hourly employees. UPS makes those decisions about whether to allow recordings of innocuous meetings where confidential and proprietary information is not at issue on a case-by-case basis.

**INTERROGATORY NO. 5**:  Has any UPS employee in Arkansas/Kansas/Missouri ever requested to tape record a meeting? If so, please identify each such employee and state whether the tape recording was in fact allowed.

**OBJECTION:** UPS objects to this Interrogatory as overly broad, unduly burdensome, and not relevant to the claims and defenses in this case. In particular, this Interrogatory seeks information that is outside the timeframe relevant to this case, and exceeds the geographic scope of this case. As Plaintiff is aware, UPS is a large company with thousands of employees whose jobs take them to different locations that may not be the primary place where they are employed. Additionally, this Interrogatory is overbroad in that it is not limited to similarly situated individuals, i.e. employees who were high-level division managers in the Central Plains District. Not all of UPS employees are managers who have access to confidential and proprietary information during meetings; during the relevant timeframe, Plaintiff was a high-level division manager who had access to such

information. UPS also objects to the temporal scope because Plaintiff's claims pertain to her time working as the Division Manager for the West Central Division of the Central Plains District. She began working as the Division Manager for the West Central Division in 2016, and she has not narrowed this Interrogatory to any period potentially relevant to the claims. As written, this Interrogatory seeks information about any employee who has ever been in Arkansas, Kansas, or Missouri, and has asked to tape record meetings since the company's formation. Such a request is overly broad and not relevant to the claims and defenses in this case. Instead, this Interrogatory is more appropriately limited to other high-level manager employees who requested an accommodation to tape record meetings, and/or requested to receive a meeting agenda within the last five years.

ANSWER: UPS incorporates its answers to Interrogatories No. 2 and 4, and its response to Request for Production No. 1.

INTERROGATORY NO. 6: State all facts that support each of the affirmative defenses you intend to assert, or have asserted, during the course of this litigation.

OBJECTION: UPS objects to the extent this Interrogatory seeks information protected from disclosure by the attorney-client privilege and/or the work-product doctrine. UPS further objects to this Interrogatory as overbroad and unduly burdensome, because it calls for a narrative description of information that may be more efficiently and less burdensomely obtained through other discovery methods, such as a deposition. Additionally, Plaintiff's request for "all facts" that UPS intends to rely on to support its affirmative defenses in this case constitutes a contention Interrogatory that UPS is not required to respond to until all discovery on the matter is complete. Accordingly, UPS

reserves the right to supplement its response to this Interrogatory below once all necessary discovery concludes.

ANSWER:  UPS incorporates its answer to Interrogatory No. 2. By way of further response, UPS states, in mid-2016, Plaintiff became the Division Manager of the West Central Division, Central Plains District. From the beginning of her time as Division Manager for the West Central Division, Plaintiff struggled with her performance. For example, one of Plaintiff's most significant performance issues was her failure to hold her employees accountable for their own performance deficiencies, particularly in the area of safety. A January 2017 safety audit of the West Central Division revealed safety was not improving under her leadership; indeed, it was ranked at the bottom of the Central Plains District for safety. In light of the safety audit results, UPS asked Plaintiff to implement a plan to improve these safety issues. UPS provided Plaintiff with resources and support to improve the Division. However, as of August 2017, the Division had still not improved. During a meeting on August 11, 2017, Plaintiff admitted she had failed to discipline managers with respect to safety related avoidable auto accidents. Because of her continued failure to improve her Division and hold employees accountable, Plaintiff received a rating of "Significant Improvement Needed" on her 2017 performance evaluation. UPS continued to provide support to Plaintiff in an effort to help Plaintiff achieve better results for her Division. After more than a year of continued failure to improve her Division's performance, despite the additional resources provided to her by UPS, Plaintiff was placed on a performance improvement plan on March 21, 2018. On March 22, 2018, Plaintiff was scheduled to meet with her supervisor and Human Resources personnel to further discuss the performance improvement plan, but was unable to do so because of an alleged panic

attack. As explained in UPS's answer to Interrogatory No. 2, which is incorporated herein, Plaintiff never returned to work after this incident.

At no time during Plaintiff's time as Division Manager of the West Central Division did she report or complain of race discrimination.


**INTERROGATORY NO. 7:** Please identify the essential job functions of Plaintiff's former job Package Division Manager, stating in detail why you believed Plaintiff's requests for accommodations were unreasonable.

**ANSWER: Pursuant to Fed. R. Civ. P. 33(d), UPS directs Plaintiff to a copy of the job description for the manager and supervisor positions, which was applicable to Plaintiff between 2016 and her retirement in April 2019, UPS 000537-539. UPS's policies prohibit employees from recording conversations with a tape recorder or other recording device. Additionally, given the nature of Plaintiff's position, recording meetings she attended would have resulted in her recording UPS's confidential and propriety information. UPS communicated this information to Plaintiff, and explained to Plaintiff that it wanted to work with Plaintiff to arrive at a solution to allow her to return to work and do her job. UPS asked Plaintiff for additional information about her request for meeting agendas, specifically seeking clarification of the meetings for which she was requesting agendas, so that it could continue to engage in the interactive process and reach a solution with her. UPS also offered alternative options to tape recording meetings that would reasonably accommodate Plaintiff's condition. These options included: designating a note-taker in meetings, and allowing note-taking at her performance review meetings by all parties present, including Plaintiff, which could be reviewed or compared for completeness and**

consistency. Plaintiff failed to engage in the interactive process, insisting that tape recording meetings and receiving meeting agenda were the only accommodations she would accept. She failed to provide clarification about the meetings for which she was requesting meeting agendas.   Plaintiff failed to indicate whether she wanted another position within UPS for which she was qualified. Further, UPS directs Plaintiff to its answer to Interrogatory No. 2, which discusses the accommodations Plaintiff requested and received, including continuous medical leave, and UPS's efforts to engage in the interactive process with Plaintiff.

/s/ Shelley I. Ericsson
Shelley I. Ericsson      KS #19098
Anne L. Hershewe      KS #26321
OGLETREE, DEAKINS, NASH,
   SMOAK & STEWART, P.C.
4520 Main Street, Suite 400
Kansas City, Missouri 64111
816.471.1301
816.471.1303 *(Facsimile)*
shelley.ericsson@ogletree.com
anne.hershewe@ogletree.com

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 29th day of January, 2020, a copy of the above and foregoing was sent by electronic mail to the following:

Dustin L. Van Dyk     KS #23313
PALMER LAW GROUP, LLP
2348 SW Topeka Blvd.
Topeka, KS 66611
785.223.1836
785.233.3703 (*Facsimile*)
dvandyk@jpalmerlaw.com

Luther Oneal Sutter (admitted *pro hac vice*)
SUTTER & GILLHAM, P.L.L.C.
P.O. Box 2012
Benton, AR 72018
501.315.1910
501.315.1916 (*Facsimile*)
luthersutter.law@gmail.com

### ATTORNEYS FOR PLAINTIFF

/s/ Shelley I. Ericsson
**ATTORNEY FOR DEFENDANT**

16

## SWORN SIGNATURE

STATE OF ~~MISSOURI~~ ARKANSAS      )
                                )   ss.

COUNTY OF Pulaski      )

The below named person, of lawful age, being first duly sworn on oath, deposes and states; That he/she is an authorized representative of Defendant and has read the above and foregoing, knows and understands the contents thereof, and states that while he/she does not have personal knowledge of all the facts recited in the foregoing responses, the statements made and information provided have been collected and made available to him/her by counsel and by employees or representatives of Defendant, and the information contained in those responses is true and correct to best of his/her knowledge and belief.

Jimmy McClure
Print Name

_____
Signature

Subscribed and sworn to before me this 29th day of January, 20 20

_____
NOTARY PUBLIC

My commission expires:

June 13, 2026

41318154.4

17