**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
AT KANSAS CITY**

| | | |
|---|---|---|
| **SUSAN NORWOOD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:19-cv-02496-DDC-JPO** |
| | ) | |
| **UNITED PARCEL SERVICE, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S RESPONSE IN OPPOSITION
TO PLAINTIFF'S SECOND MOTION TO COMPEL**

Defendant United Parcel Service, Inc. ("Defendant" or "UPS") in response to Plaintiff's

Second Motion to Compel (Doc. 69) ("Plaintiff's Motion") states as follows:

**I.      Introduction**

Plaintiff Susan Norwood worked as a Division Manager for UPS's West Central

Division.   On approximately March 21, 2018, UPS told Plaintiff her performance was

unacceptable as she was consistently ranked at the bottom of Divisions within a region that

encompassed 78 different Divisions. Prior to UPS placing Plaintiff on a performance

improvement plan, she went out on leave due to anxiety and depression.  Plaintiff asked to record

meetings in the workplace, including those that included sensitive and proprietary information,

as an accommodation.  UPS deemed recording in the workplace as unreasonable (and a violation

of company policies), but continued to offer other possible accommodations, including a

dedicated note taker for certain calls/meetings.  Plaintiff would not entertain any accommodation

other than recording.  Plaintiff never returned to operations and retired from UPS on April 1,

2019.

Plaintiff's Motion asks the Court: for an Order compelling UPS to respond to Plaintiff's Request for Production 2, and an order setting a deadline to provide Plaintiff with deposition dates for witness Waring Lester.

### A.    Plaintiff's Motion Should Be Denied for Failure to Follow Local Rule 37.2.

Rule 37(d)(1)(B) requires that a motion to compel "include a certification that the movant has in good faith conferred or attempted to confer with the party failing to act in an effort to obtain the answer or response without court action." Similarly, District of Kansas Local Rule 37.2 further provides: "The court will not entertain any motion to resolve a discovery dispute pursuant to Fed. R. Civ. P. 26 through 37 . . . unless the attorney for the moving party has conferred or has made reasonable effort to confer with opposing counsel concerning the matter in dispute prior to the filing of the motion." "A 'reasonable effort to confer' means more than mailing or faxing a letter to the opposing party. It requires that the parties in good faith converse, confer, compare views, consult and deliberate, or in good faith attempt to do so."[1] "To determine whether a party has satisfied the conference requirements, the Court 'looks beyond the sheer quantity of contacts. It examines their quality as well.'"[2] "To assist the Court in its analysis, D. Kan. R. 37.2 requires that the certification 'describe with particularity the steps taken' to resolve the discovery dispute. The purpose behind the conference requirements is to encourage the parties to resolve discovery disputes without judicial involvement."[3]

---

[1] *Id.*

[2] *Firestone v. Hawker Beechcraft Int'l Serv. Co.*, No. 10-1404-JWL, 2012 WL 359877, at *1 (D. Kan. Feb. 2, 2012) (quoting *P.S. v. The Farm, Inc.,* No. 07–2210–JWL–DJW, 2008 WL 3884312, at *2 (D. Kan. Aug. 19, 2008) (quoting *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 456, 459 (D. Kan. 1999)).

[3] *Id.* (citing *P.S. v. The Farm, Inc.,* No. 07–2210–JWL–DJW, 2008 WL 3884312, at *2 (D. Kan. Aug. 19, 2008) (quoting *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 456, 459 (D. Kan. 1999)); D. Kan. R. 37.2 ("Every certification required by Fed. R. Civ. P. 26(c) and 37 and this rule related to the efforts of the parties to resolve discovery or disclosure disputes must describe with particularity the steps taken by all attorneys to resolve the issues in dispute.").

As an initial matter, Plaintiff's Motion does not describe the steps taken to resolve these issues. Instead, Defendant has the onus of outlining that for the Court to ensure it fully understands the issues before it. For that reason alone, Plaintiff has failed to follow the Local Rule by not describing with particularity the efforts the parties' attorneys have made to resolve the issues in dispute.[4] Additionally, Plaintiff's counsel has not made a reasonable effort to confer with opposing counsel as required by the Rule. As described below, Defense counsel attempted to reach resolutions with Plaintiff's counsel on these discovery issues on several occasions. Over the course of several months, Defendant offered proposals for searches of electronically stored information ("ESI") to which Plaintiff would not meaningfully respond. Instead, Plaintiff's counsel posed questions about issues that Defendant had addressed on several occasions, and would not engage with Defendant about the specifics of the search terms and parameters.

Additionally, Plaintiff has failed to make reasonable efforts to resolve the issue related to depositions. As described below, Defendant attempted to arrange deposition dates as it was able to in light of the COVID-19 pandemic. Plaintiff did not respond to Defendant's proposal in April 2020 that the parties move forward with depositions of individuals located locally. Believing this was agreeable, Defendant began making arrangements with those witnesses. But, as of May 28, Plaintiff's counsel had not responded as to whether he would proceed with the depositions offered; instead, for the first time, he insisted on proceeding with depositions in a particular order, demanding Mr. Lester's deposition occur prior to any other depositions.

---

[4] *See Fox v. Pittsburg State Univ.*, No. 14-2606-JAR/KGG, 2016 WL 107935, at *2 (D. Kan. Jan. 8, 2016) ("The local rules further state that a court '**will not entertain** any motion to resolve a discovery dispute' unless a reasonable effort has been made to confer regarding the motion's underlying issue(s) prior to the filing of the motion. D. Kan. Rule 37.2. The local rule also requires the certification to describe with particularity the steps taken by all counsel to resolve the issue in dispute. These requirements encourage parties to resolve discovery disputes 'without judicial intervention.'") (emphasis original, quotations and citations omitted).

In sum, the conduct by Plaintiff's counsel to date does not show a reasonable effort to resolve these discovery disputes as required by the federal and local rules. Instead of working with Defendant in good faith, Plaintiff seems more preoccupied with burdening UPS, delaying its ability to timely process and review ESI or produce witnesses, and berating Defendant and its counsel. Because Plaintiff failed to comply with Fed. R. Civ. P. 37 and D. Kan R. 37.2, Plaintiff's Motion should be denied. Nonetheless, UPS provides the following information about these discovery disputes if the Court is inclined to consider them on the merits.

### B.    Plaintiff's Request for Production No. 2

#### 1.    Efforts to Resolve This Discovery Dispute

Plaintiff's Motion claims that Defendant is "sandbagging" Plaintiff, and accuses Defendant of hiding the identity of certain individuals "involved in the decision-making." Defendant denies these claims. First, Plaintiff has taken several depositions wherein that information has been shared. Further, UPS has seasonably supplemented its discovery responses, and will continue to do so as discovery continues. Finally, as of March 11, 2020, UPS had already produced over 3,500 pages in this case.

In anticipation of discovery requests contemplating a search of ESI, Defendant began trying to work with Plaintiff about potential ESI issues throughout the month of January 2020. Exhibit 1. The parties even discussed the matter during their Rule 26 conference. Exhibit 2 at 5.E. On January 9, Plaintiff proposed searches that contemplated a search of all individuals in the parties' Rule 26 disclosures (which, at that time was approximately 25 individuals). *Id.* On January 17, Defendant asked for clarification on the proposed search terms, and also suggested limiting the search to six custodians, including Plaintiff. *Id.* Plaintiff did not respond to those proposals.

On February 19, 2020, Plaintiff propounded her first requests for production. In Request for Production No. 2,[5] Plaintiff requested searches of e-mails "sent or received by any witness identified by the parties employed by UPS" since January 1, 2017 that relates to Interrogatories No. 1-5. Plaintiff requested the following search terms:

- Request! /s accommodat! /p (tape or agenda)
- Sutter
- Norwood and (ADA or disability or EAP).

Exhibit 4.

On March 22, the parties agreed to modify the first search from "Request! /s accommodat! /p (Tape or agenda)" to: "(Request* W/25 accommodat*) W/25 (Tape or agenda). Exhibit 5. On April 3, UPS responded to Request No. 2, objecting because it was unduly burdensome, and disproportional to the needs of the case—particularly given the number of custodians and the fact that the proposed searches were not reasonably specific. Exhibit 4. In addition, UPS objected to the number of custodians contemplated by the request. *Id.* If "witnesses" included all individuals identified in the parties' Rule 26 Disclosures and mentioned in response to any discovery request, the number of custodians, including those identified in subsequent Rule 26 disclosures and the parties' discovery requests, is thirty-five (35).

On April 24, Defendant continued its good faith efforts to reach an agreement about the requested ESI searches and custodians. Exhibit 5. In particular, Defendant's counsel reached out to Plaintiff's counsel explaining  that it had run the requested searches for just the individuals identified by Defendant in its Rule 26 disclosures, a total of 11 custodians, which had yielded incredibly voluminous results that would have been unduly burdensome for Defendant to collect,

---

5   Defendant notes that Plaintiff has propounded three Requests named "Request for Production No. 2," one of which Plaintiff indicated was meant to be an interrogatory, but was incorrectly labeled a request for production. The request at issue here was one of two labeled "Request for Production No. 2" propounded on February 19, 2020.

host, and review. *Id.* Defendant then noted that adding more custodians to the searches would only increase the volume of data yielded. *Id.*

In an effort to reach a compromise, Defendant proposed alternative search terms and custodians. *Id.* For custodians, Defendant proposed searches of the following: Plaintiff; Plaintiff's supervisor during the time period at issue in the lawsuit, Waring Lester; Human Resources personnel Eric Day; Stan Roux, current Director for the Central US Employee Relations; Rebecca Aciego, current Talent Management Manager for Defendant; and the employee who took on the Plaintiff's job duties while she was on leave, Mark Bowen, Division Manager. *Id.* For search terms, Defendant proposed the following modifications:

- Revise "Sutter" to "Sutter" /20 "Norwood"[6] and
- Revise the search for "Norwood and ADA or disability" to "Norwood w/25 ADA or disability."

*Id.*

While Plaintiff's counsel responded to that email, he did not respond to the proposed modifications. Exhibit 6. Instead, he asked how many of the reviewable items were duplicates. *Id.* Defense counsel responded that Defendant would not be able to ascertain how many of the results were duplicates, and would not know unless the data is uploaded to its review system—at which point Defendant would have already begun incurring the costs to collect/upload, host, and begin review of the results. *Id.*

On April 27, Defendant wrote a letter to Plaintiff's counsel in response to discovery issues raised by Plaintiff, where Defendant again asked Plaintiff to respond to its proposals about ESI. Exhibit 7.

---

6   Though Defendant still believes that a search of Plaintiff's counsel's last name, whether conducted in a proximity search or otherwise, is not relevant to any claims or defenses, Defendant nonetheless proposed this modification as a compromise.

On May 8, 2020, Plaintiff's counsel responded that he would agree to "limit" the custodians to "District Staff" (comprised of approximately 30 individuals who had no involvement in Plaintiff's accommodation request or ultimate retirement) and the "ADA Accommodation Committee." [7] Exhibit 8.

Plaintiff's request to include "District Staff" in the ESI search actually increased the number of custodians requested. Exhibit 9.

Because the parties had reached an impasse, Defense counsel recommended that the parties seek the guidance of the Court. The parties reached out to the Court on May 11, 2020. On May 15, 2020, the Court indicated its preference that the parties should proceed with motion practice if they could not reach a resolution.

In an effort to resolve this issue without involving the Court, Defendant again reached out to Plaintiff about this dispute on May 18, 2020. Exhibit 9. In addition to the custodians previously proposed, Defendant also offered to add two more custodians: Terra Vellema, from Defendant's Occupational Health Department; and Jimmy McClure, UPS Operations Manager. *Id.* Defendant also added "if there is a specific person who you believe should also be added to this list, please let us know who and your basis for believing you need to have them as a custodian." *Id.* Defense counsel also reattached the prior correspondence from April 24, asking for Plaintiff's position on the proposed search parameters. *Id.* Defense counsel asked one last time for Plaintiff's input on ESI by close of business on May 20, 2020, so this issue could be resolved in a timely manner. *Id.*

---

[7] Further, Plaintiff's counsel has made it clear that he is expanding his suits against UPS in the Kansas area and is "building his network."  Thus, it is  Defense counsel's belief that, based on opposing counsel's past practices and his own representations, that he is using discovery in this matter as a tool for cases/clients other than the one at bar.

On May 20, instead of responding to any of those proposals, or offering reasonable alternative proposals, Plaintiff's counsel asked questions that had already been answered in prior correspondence with him. Exhibit 10. Defense counsel again re-forwarded the prior correspondence, even highlighting the answers to those questions. *Id.* Plaintiff's counsel continued to refuse to respond to Defendant's proposals, instead questioning the type of system Defendant uses and why certain information could not be more easily ascertained, even though Defendant had already explained that its system did not, for example, allow Defendant to determine how many of the search results are duplicates until it had already incurred the costs of collecting, hosting, and reviewing the ESI. *Id.*

On Friday, May 22, after Plaintiff's continued failure to respond meaningfully to Defendant's proposals, Defendant informed Plaintiff that it would be moving forward with the searches of the proposed seven custodians proposed with the modified search terms proposed. Exhibit 10. Defendant is currently in the process of reviewing the results of those searches, and will produce responsive ESI upon completion of that review.

> **2.     The ESI Searches, As Requested By Plaintiff, Are Not Proportional to the Needs of the Case.**

The search parameters proposed by Defendant are consistent with the limitations this court has imposed for ESI searches. Fed. R. Civ. P. 26(b)(1) allows discovery, including ESI that is "relevant to any party's claim or defense and proportional to the needs of the case." "This proportionality standard requires consideration of the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties'

resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."[8]

"[D]etermining what is relevant and proportional under the circumstances for each matter often requires a highly fact-specific inquiry."[9] "[A]bsent agreement among the parties, the party who will be responding to discovery requests is entitled to select the custodians it deems 'most likely to possess responsive information and to search the files of those individuals.'"[10] "Unless the party's choice is 'manifestly unreasonable or the requesting party demonstrates that the resulting production is deficient,' the court should not dictate the designation of ESI custodians."[11] "[T]he party seeking to compel the designation of a particular additional ESI custodian has the initial threshold burden of **showing that the disputed custodian's ESI likely includes information relevant to the claims or defenses in the case**."[12] Mere speculation that an individual's position within a company's organization may "increase the relevance of that individual's files is **not a basis** for designating that individual as a custodian."[13]

Plaintiff's position seems to be that he needs searches of all of the individuals identified in discovery by either party in order to obtain information related to Interrogatories No. 1 – 5, as requested in her Request for Production No. 2. This is not reasonable, or proportional to the needs of the case, and Plaintiff has yet to articulate why it would be. Indeed, Defendant has produced over 3,500 pages in this case, and Plaintiff has not pointed to information she believes she does not have. Even though Defendant is entitled to choose its custodians, it has made every

---

[8] *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*, No. 17-MD-2785-DDC-TJJ, 2018 WL 1440923, at *1 (D. Kan. Mar. 15, 2018).

[9] *Id.* at *2 (citation omitted).

[10] *Id.* (quotation omitted).

[11] *Id.* (quotation omitted).

[12] *Id.* (citation omitted).

[13] *Id.* (citation omitted).

effort to work with Plaintiff in good faith on these ESI issues; but, Plaintiff has refused to respond in kind.[14] This case involves a single plaintiff and claims of employment discrimination. Plaintiff seeks this ESI for only one claim, the claim of disability discrimination for alleged failure to accommodate. As Defendant has explained several times to Plaintiff, the requested searches—as written and with the more than 30 custodians proposed—would be unduly burdensome and incredibly costly for Defendant to collect, host, and review. Indeed, for just a fraction of the custodians Plaintiff requested, in particular the 11 individuals identified in Defendant's Rule 26 disclosures, the amount of data yielded is over 37,000 reviewable items.[15] Exhibit 5.

Plaintiff has not rebutted or otherwise provided any information that would suggest Defendant's proposed custodians and searches are not reasonable, and has not met her burden to show why the custodians beyond those proposed by Defendant are required for the prosecution of this case. As a result, Defendant has met its obligations as it pertains to ESI, and Plaintiff's request it is disproportional to the needs of the case. Therefore, the Court should deny Plaintiff's Motion as it pertains to Request for Production No. 2.

### C.    Defendant has Not Delayed Scheduling Depositions, and Plaintiff's Insistence on In-Person Appearance is Unreasonable and Unfairly Prejudicial.

Plaintiff claims that Defendant has delayed setting the deposition of Waring Lester, a current employee of Defendant and told Plaintiff to get the Court involved on this issue. Mr. Lester was Plaintiff's supervisor at points during the period at issue in the lawsuit, and currently

---

[14] *See In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*, at *1.

[15] A review of just this data for 11 custodians would require Defendant to obtain an ESI review team to conduct an initial review, and then require subsequent review by the Defendant's attorneys of record and their staff before producing the documents. A search of additional custodians would, of course, increase the amount of data to review, requiring more time by all individuals involved in the review process to review the search results. In addition to the costs and fees incurred for just the review, Defendant would also incur costs to host the data in the review system. The more data collected, the more expensive it is for Defendant to host it.

works for Defendant's Desert Mountain District. He splits his time between Colorado and Arizona, a fact of which Plaintiff's counsel is aware. Exhibit 11. While Defendant did suggest seeking guidance from the Court, crucially absent for Plaintiff's Motion is any mention of the efforts to resolve this issue.

### 1.    Efforts to Resolve This Discovery Dispute.

To date, Defendant has produced two witnesses that appear in its Rule 26 Disclosures, Stan Roux (deposed February 11, 2020) and Eric Day (deposed February 24, 2020). Additionally, Defendant has produced Jon Robertson (deposed March 4, 2020), the most senior person on the Regional ADA Committee, who was specifically requested by Plaintiff. Defendant was in the process of scheduling additional depositions of the remaining witnesses, including Waring Lester, when state and local stay-at-home orders related to the COVID-19 pandemic began to be issued, and greatly impaired both counsel's and the witnesses' availability, particularly given the fact that Defendant was considered an essential business. Exhibits 12 and 3. On March 24, 2020, in light of these unprecedented challenges presented by the COVID-19 pandemic, Defendant proposed a 30-day hold on depositions, including Plaintiff's.[16] Exhibit 13 and 7. Plaintiff did not respond to that proposal.

On April 27, Defendant noted it would try to arrange deposition dates for witnesses in May and June. Exhibit 7. On May 6, 2020, Plaintiff's counsel sent an e-mail saying he "needed depo dates," and insisted that he appear in-person for these depositions, even if Defense counsel was unable to be there in person. Exhibit 14. Defense counsel advised that her firm is asking its employees to avoid travel because of the pandemic, and was not allowing in-person depositions at the firm to move forward at that time. *Id.*; *see also* Exhibit 15. On May 11, in an effort to

---

[16] Plaintiff's deposition began on March 13, 2020, but had to be abruptly adjourned after opposing counsel indicated—in the middle of the deposition—that he had reason to believe he had been potentially exposed to COVID-19.

arrange depositions for which everyone could appear in person (to the extent the witnesses felt comfortable doing so) and exercise appropriate social distancing requirements, Defense counsel explained that it would work to provide dates for individuals located locally or within driving distance of the Kansas City area and look for the Court's guidance on out-of-state depositions.[17] Exhibit 9.

On Monday, May 18, Defendant offered deposition dates for two individuals: Rebecca Aciego and Bryan Lenox, both of whom appear on the parties' Rule 26 disclosure. *Id.* After not hearing back, Defense counsel followed up the next day. Exhibit 15. Plaintiff did not respond to indicate whether he wanted to move forward with these depositions until Defense counsel reached out again, on May 28, about the proposed dates, and offering assistance in arranging depositions at courthouses or court reporter offices as Defense counsel's firm was not hosting in-person depositions. *Id.* In response, Plaintiff's counsel stated—for the first time—that he wanted to take the depositions in a certain order. *Id.* He insisted on taking Waring Lester's deposition next and appearing in person for that deposition, even if Defense counsel was unable to do so. *Id.* Defense counsel stated "this is unfamiliar territory and something on which we might need the court's guidance if we can't agree to either attend remotely, or wait until we can both attend in person." *Id.* She again stated that she believed it was appropriate to arrange the local depositions first, and asked Plaintiff's counsel to provide a list with the order he proposes for the witness depositions so that Defendant could determine how to move forward. *Id.*

To date, Plaintiff's counsel has provided no such list. Defense counsel also stated she would work on getting Mr. Lester's availability, and again asked if Plaintiff's counsel would

---

[17] The parties reached out to the Court on May 11, 2020 about this issue, and the ESI issues described above, asking if the Court would be agreeable to a telephone conference on the matter. On May 15, the Court expressed its preference that the parties proceed with motion practice if they could not reach a resolution.

agree to conduct it remotely. *Id.* Plaintiff's counsel continued to refuse to conduct depositions remotely, stating "You can attend remotely. I will be there in person." *Id.*

  2. **Defendant is Willing to Move Forward with Mr. Lester's Deposition, But Plaintiff's Insistence on In-Person Depositions is Unreasonable and Prejudicial.**

  Defendant has not delayed scheduling Mr. Lester's deposition. The COVID-19 pandemic has disrupted both Defendant's and its counsel's regular operations and ability to litigate this (and other) matter. Defendant made this clear to Plaintiff as soon as it recognized the potential impact this public health crisis would have on this case. Exhibit 13. The impact in this case was particularly acute given the fact that Defendant was considered an essential business, and many of the witnesses in this case are not located in the greater Kansas City area or within driving distance of the Kansas City area.[18] Defendant offered deposition dates for individuals who were located locally and felt comfortable appearing in person, so that discovery could continue to move forward. Plaintiff's counsel did not respond. Then suddenly—and for the first time— Plaintiff's counsel announced he wanted to take depositions in a specific order. He refuses to conduct the depositions remotely, and insists that he appear in person with Mr. Lester, a current management employee of Defendant who lives in Phoenix, even if Defense counsel cannot be physically present.

  Plaintiff's proposal is as follows: Plaintiff's counsel would appear live in the same room as Defendant's witness, Mr. Lester, while Defense counsel appears remotely via video or phone. First, this is unfairly prejudicial to Defendant. This is a situation where Plaintiff's counsel would be questioning Defendant's witness—they two being the only ones in the room—while Defendant's counsel watches and/or listens in via video. The potential for intimidation and

---

[18] For this very reason, Defendant agreed to Plaintiff's request to move all deadlines in this case by 90 days.

harassment of the witness in such a scenario is high. Additionally, while technology has made strides when it comes to remote appearance in recent years, the reality is that Defense counsel's ability to make objections and fully represent Defendant will be impaired if she cannot be physically present when Plaintiff's counsel is. As a result, Defense counsel feels it necessary to appear in person with the witness and Plaintiff's counsel.

However, as Defense counsel has explained, consistent with guidance from the Centers for Disease Control and Prevention, their firm has discouraged travel and holding in-person depositions, mediations, and other such gatherings at their offices.[19] Recently, the Southern District of New York took up the issue of whether to allow in-person depositions to proceed in a situation that would have required witnesses and counsel to travel across state lines. In ruling on this issue, the court denied the request for in-person depositions, stating:

> Although Plaintiff's diligence in attempting to find large conference rooms is extraordinary, evidence continues to accumulate that, depending on the length of time for which individuals share an indoor space, merely maintaining a distance of six feet is likely insufficient to prevent transmission. Kimberly A. Prather et al., *Reducing transmission of SARS-CoV-2,* Science (May 27, 2020) ("Increasing evidence for SARS-CoV-2 suggests the 6 ft CDC recommendation is likely not enough under many indoor conditions where aerosols can remain airborne for hours, accumulate over time, and follow air flows over distances further than 6 ft."),   https://science.sciencemag.org/content/early/2020/06/02/science.abc6197.1. Plaintiff's proposal requires counsel or witnesses to travel across state lines from disparate places of origin, congregate for several hours in a confined space, and then disperse back to their homes. And because Plaintiff is insisting that he needs to observe the witnesses' demeanor, face masks would presumably not be used. Those conditions are undoubtedly a bad mix during a pandemic. The burden on the witnesses, in the form of potential exposure and infection for them and their families, needs no further elaboration. Indeed, for essentially those same reasons, the Court has not resumed in-person proceedings. The fact that certain jurisdictions are beginning to relax their restrictions, a process based in part on

---

[19] *See* Travel in the US, Coronavirus Disease 2019 (COVID-19), Centers for Disease Control and Prevention,    https://www.cdc.gov/coronavirus/2019-ncov/travelers/travel-in-the-us.html   ("Because travel increases your chances of getting infected and spreading COVID-19, **staying home is the best way to protect yourself and others from getting sick**.") (emphasis original).

political or economic considerations, does not mean that community spread has ceased or that individuals need not be concerned about potential exposure.[20]

The same issues are present here. Defense counsel informed Plaintiff's counsel that Mr. Lester preferred to have his deposition taken remotely, instead of being in a room with numerous individuals for several hours. Exhibit 16.  In response, Plaintiff's counsel said "Is UPS bearing the expense?" *Id.* Allowing this deposition (or indeed any deposition for out-of-state witnesses) to move forward at this time would require counsel for both parties to travel across state lines. For Defense counsel, it would require for travel via commercial airline.

Further, it would place counsel and the witness in the same confined area for hours at a time, increasing the potential risks associated with transference of an infection, which would already be heightened because of the travel involved. In sum, it runs afoul the guidance from public health authorities to prevent the spread of the virus, and unnecessarily increases the risk of potential exposure to counsel and the witness, Mr. Lester, who has expressed that he is not comfortable with an in-person appearance. These issues can be obviated when all parties and counsel appear remotely, which Defendant has offered. Plaintiff's counsel, who travels via his personal jet, will not agree to do so. Thus, Defendant respectfully requests the Court deny Plaintiff's Motion to Compel as to Mr. Lester's deposition moving forward in person, and order Plaintiff to conduct the deposition for Mr. Lester and all other out-of-state deponents (and possibly local depositions, depending on the deponent's comfort level) remotely.

## II.    Conclusion

Based on the foregoing, UPS respectfully requests an order denying Plaintiff's Motion to Compel with regard to Request for Document 2 and scheduling depositions.

---

[20] *David A. Joffe v. King & Spalding LLP*, 1:17-cv-03392-VEC-SDA, Doc. 239 (S.D.N.Y June 4, 2020).

Respectfully submitted,

/s/ Shelley I. Ericsson
Shelley I. Ericsson      KS #19098
Anne L. Hershewe      KS #26321
OGLETREE, DEAKINS, NASH,
  SMOAK & STEWART, P.C.
4520 Main Street, Suite 400
Kansas City, Missouri 64111
816.471.1301
816.471.1303 *(Facsimile)*
shelley.ericsson@ogletree.com
anne.hershewe@ogletree.com

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 9th day of June, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and sent notification of such filing to the following:

| | |
|---|---|
| Dustin L. Van Dyk     KS #23313 | Luther Oneal Sutter (admitted *pro hac vice*) |
| PALMER LAW GROUP, LLP | SUTTER & GILLHAM, P.L.L.C. |
| 2348 SW Topeka Blvd. | P.O. Box 2012 |
| Topeka, KS 66611 | Benton, AR 72018 |
| 785.223.1836 | 501.315.1910 |
| 785.233.3703 (*Facsimile*) | 501.315.1916 (*Facsimile*) |
| dvandyk@jpalmerlaw.com | luthersutter.law@gmail.com |

**ATTORNEYS FOR PLAINTIFF**

/s/ Shelley I. Ericsson
**ATTORNEY FOR DEFENDANT**

43062750.2