UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

SUSAN NORWOOD,

               Plaintiff,

v.                                          Case No. 19-2496-DDC

UNITED PARCEL SERVICE, INC.,

               Defendant.

## **ORDER**

The plaintiff, Susan Norwood, has filed a second motion (ECF No. 69) seeking to compel supplemental discovery responses from the defendant, United Parcel Service, Inc. Plaintiff has alleged gender discrimination, disability discrimination, retaliation, and wrongful discharge claims.[1]  Plaintiff served her second interrogatories and requests for production on February 19, 2020.[2]  Defendant served responses on April 3, 2020.[3]  Now plaintiff moves to compel a supplemental response to one request for production.  Plaintiff also seeks an order setting a deadline for defendant to provide deposition dates and setting an expert disclosure deadline accordingly.[4]  For the reasons discussed below, the motion is denied.

---

[1] ECF No. 1.

[2] ECF No. 69-1.

[3] ECF No. 51.

[4] ECF No. 72.

O:\ORDERS\19-2496-DDC-69.DOCX

<u>Efforts to Confer</u>

As a threshold matter, the court first considers whether the parties have sufficiently conferred regarding plaintiff's motion, as required by the federal and local rules.  Fed. R. Civ. P. 37(a)(1) requires motions to compel discovery "include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."  In addition, D. Kan. R. 37.2 states,

> The court will not entertain any motion to resolve a discovery dispute pursuant to Fed. R. Civ. P. 26 through 37 . . . unless the attorney for the moving party has conferred or has made reasonable effort to confer with opposing counsel concerning the matter in dispute prior to the filing of the motion.  Every certification required by Fed. R. Civ. P. 26(c) and 37 and this rule related to the efforts of the parties to resolve discovery or disclosure disputes must describe with particularity the steps taken by all attorneys to resolve the issues in dispute.

> A "reasonable effort to confer" means more than mailing or faxing a letter to the opposing party.  It requires that the parties in good faith converse, confer, compare views, consult, and deliberate, or in good faith attempt to do so.

The court takes these conference requirements seriously.  Failure to confer alone is a sufficient basis for denial of a discovery motion.[5]  The purpose of Fed. R. Civ. P. 37(a)(1) and D. Kan. R. 37.2 is to encourage parties to satisfactorily resolve their discovery disputes before resorting to judicial intervention.[6]  "Failure to confer or attempt to confer may result

---

[5] *Carter v. Spirit Aerosystems, Inc.*, No. 16-1350-EFM-GEB, 2018 WL 5923487, at *7 (D. Kan. Nov. 13, 2018).

[6] *Heglet v. City of Hays, Kan.*, No. 13-228, 2014 WL 2865996, at *1 (D. Kan. June 24, 2014); *Activision TV, Inc. v. Carmike Cinemas, Inc.*, No. 14-208-JWL, 2014 WL 789201, at *2 (D. Kan. Feb. 26, 2014); *VNA Plus, Inc. v. Apria Healthcare Grp., Inc.*, No. 98-2138,

in unnecessary motions.  When the court must resolve a dispute the parties themselves could have resolved, it must needlessly expend resources it could better utilize elsewhere."[7] The court looks at all surrounding circumstances to determine whether the movant's efforts to confer were reasonable.[8]  That includes looking beyond the sheer quantity of contacts and examining their quality, as well.[9]

Plaintiff's counsel represents he has "in good faith, attempted to consult with the defendant, via e-mail, as defense counsel prefers."[10]  Plaintiff's counsel attaches a string of e-mails as an exhibit to the motion, indicating that "defense counsel has referred the undersigned to the court."[11]  The undersigned has reviewed the attached exhibits provided by both parties.  A somewhat-detailed summary is necessary to illustrate the court's reasoning.

Defense counsel sent an e-mail on April 24, 2020, reiterating their objections to the request for production but providing the initial responses of a proposed search with 11

---

1999 WL 386949, at *1 (D. Kan. June 8, 1999) (citing *Nave v. Artex Mfg., Inc.*, No. 96-2002, 1997 WL 195913, at *1 (D. Kan. Apr. 16, 1997)).

[7] *Activision TV, Inc.,* 2014 WL 789201, at *2 (quoting *Manheim Auto. Fin. Servs. v. Guthrie*, No. 06-2298, 2007 WL 977558, at *1 (D. Kan. Mar. 30, 2007)).

[8] *Id.* (quoting *Wilbert v. Promotional Res., Inc*., No. 98-2370, 1999 WL 760524, at *2 (D. Kan. Sept. 21, 1999)).

[9] *Firestone v. Hawker Beechcraft Int'l Serv. Co.*, No. 10-1404-JWL, 2012 WL 359877, at *1 (D. Kan. Feb. 2, 2012).

[10] ECF No. 68 at 1.

[11] *Id.*

custodians to estimate the costs of obtaining that data.[12]  That search generated over 37,000 items.  Defense counsel noted in that e-mail that adding 14 additional custodians would necessarily increase the cost and number of responsive documents.[13]  Notably, defense counsel asked for clarification about what information plaintiff's counsel believed he did not already have or why he was seeking information from 25 custodians.[14]  Defense counsel cited case law from the District of Kansas discussing the proportionality standard for ESI,[15] then offered proposed modifications to the number of custodians and certain search terms.[16]

In response to defense counsel's paragraphs-long e-mail, plaintiff's counsel sent three sentences: "Does that include duplicates?  Of course you haven't, because if you did and you identified a relevant document, you would have specific obligations.  When will I receive a privilege log and a response to my previous e-mail?"[17] Defense counsel again asked for feedback on the proposed searches in an May 18, 2020 e-mail.[18]  Plaintiff's

---

[12] ECF No. 69-2 at 13.

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.* at 14.

[17] *Id.* at 12.

[18] *Id.* at 8.

counsel responded with a list of clarifying questions that were ostensibly addressed in multiple prior letters, which defense counsel re-sent on May 19, 2020.

The rest of the communication in this e-mail chain reflects a similar cadence: defense counsel offers lengthy, detailed e-mails with accommodations and proposals, and plaintiff's counsel doesn't reply to the substance of the conversation or offer any counter-proposals.[19]   Rather, he asks a series of questions about the technical process of searching for data.[20]   Defense counsel repeatedly confirms they will go ahead with the proposal they've offered.[21]

A similar pattern emerges with the issue related to the number and order of depositions.  Depositions in this case were underway before the stay-at-home orders were issued related to the COVID-19 pandemic.[22]  Defense counsel told plaintiff's counsel about the limitations they faced with intrastate travel, especially in light of defendant's status as an essential business.[23]  Defense counsel proposed a 30-day hold on depositions, to which plaintiff did not respond.[24]  When plaintiff's counsel failed to respond to the suggestion that they should proceed with deposing local individuals first, defense counsel began

---

[19] *See id.*

[20] *Id.* at 2.

[21] *Id.* at 1.

[22] ECF No. 72 at 11.

[23] *Id.*

[24] *Id.*

making those arrangements.[25]   Only on May 28, 2020 did plaintiff's counsel state that depositions needed to occur in a certain order, with the deposition of plaintiff's direct supervisor, Waring Lester, going first.[26]   Despite defense counsel's asking, plaintiff's counsel has yet to provide the list with a proposed order of depositions.[27]

There are certainly situations where the parties, dealing in good faith, are unable to reach a compromise, and court involvement becomes necessary.  This is different.  From the parties' briefing, it appears plaintiff's counsel consistently ignores messages or refuses to engage in meaningful communication with defense counsel.  This behavior contradicts the spirit of the discovery process, the local rules, and the scheduling order, which includes an agreement by the parties to "work together to determine appropriate parameters including date ranges and search terms" for ESI.[28]   The court also points to its May 22, 2020 order citing plaintiff's failure to confer about the total number of depositions needed.[29]   Based on this pattern, the court agrees plaintiff's counsel has not in good faith conferred on the issues raised here.  The court, therefore, denies plaintiff's motion.

---

[25] *Id.* at 12.

[26] *Id.*

[27] *Id.*

[28] ECF No. 22 at 6.

[29] ECF No. 68 at 2; *see* ECF No. 52 at 12-13.

Request No. 2

To be clear, the court is denying the motion because it finds plaintiff has not sufficiently complied with the federal and local rules requiring the parties to confer in good faith. But because the court, unfortunately, senses communication roadblocks will persist, it offers the following instruction. If plaintiff were to re-file a motion to compel after complying with the rules to confer, the court is not inclined to grant the motion to compel as to Request No. 2.

Request No. 2. reads:

Please produce a copy of all emails regarding the following search terms sent to or received by any witness identified by the parties employed by UPS since 1/1/17 in response to Interrogatory Numbers 1 and 5:

Request! /s accomodat! /p (Tape or agenda)

Sutter

Norwood and (ADA or disability or EAP).[30]

The court, for ease of understanding, refers back to Interrogatory Nos. 1 and 5 here: Interrogatory No. 1, served on December 26, 2019, sought the identity of individuals "with knowledge of the facts and circumstances involved in Ms. Norwood's request for accommodation and separation from employment."[31] The court granted plaintiff's motion

---

[30] ECF No. 69-1 at 1-2.

[31] ECF No. 43-1 at 1.

7

to compel this information in its May 22, 2020 order.[32]   Interrogatory No. 5 sought the identities of any UPS employee in Arkansas, Kansas, or Missouri who has ever requested to tape record a meeting.[33]   The court denied plaintiff's motion to compel this information based on its overbreadth and found defendant's response of identifying other high-level manager employees who requested to tape record in the workplace within the last five years was adequate.[34]

The court takes seriously the proportionality standard, which moved to the forefront of Fed. R. Civ. P. 26(b) when the rule was amended in 2015, which reinforced the need for parties to focus on the avoidance of undue expense to the parties.[35]   The proportionality standard takes into account "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."[36]

---

[32] ECF No. 68 at 2-4.

[33] ECF No. 43-1 at 10.

[34] ECF No. 68 at 5-7.

[35] *Frick v. Henry Indus., Inc.*, No. 13-2490-JTM-GEB, 2016 WL 6966971, at *3 (D. Kan. Nov. 29, 2016).

[36] Fed. R. Civ. P. 26(b)(1); *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*, No. 17-MD-2785-DDC-TJJ, 2018 WL 1440923, at *1 (D. Kan. Mar. 15, 2018).

To support her motion, plaintiff argues defendant "appears to be still sandbagging on the identities of the persons who were involved in the decision-making."[37]  Plaintiff represents defendant has continued to refuse to identify the individuals involved in the accommodation process.  If that is accurate, defendant is directed to comply with the court's prior order directing defendant to respond to Interrogatory No. 1 and supplement the list of individuals with the names of in-house and outside counsel involved in the accommodation meeting.[38]

Plaintiff also asserts defendant has offered conclusory objections and a failure to address the issues.  The court disagrees.  Based on the briefing and the parties' communication, it is evident defendant has squarely addressed the issues raised by Request No. 2, namely, the manner and scope of the requested ESI.  Plaintiff, it appears, has offered no reasonable alternative proposals and does not explain why additional custodians are necessary or why the seven proposed custodians are insufficient.[39] Defendant represents it is currently reviewing the results of the searches of seven custodians with the modified

---

[37] ECF No. 70 at 3.

[38] ECF No. 68 at 3-5.

[39] The list includes plaintiff; plaintiff's supervisor during the time period at issue in the lawsuit, Waring Lester; Human Resources personnel Eric Day; Stan Roux, current Director for the Central US Employee Relations; Rebecca Aciego, current Talent Management Manager for defendant; and the employee who took on plaintiff's job duties while she was on leave, Mark Bowen, Division Manager.  ECF No. 72 at 6.

search terms.[40]  In the absence of plaintiff's meaningful response to the proposals, the court believes defendant's proposals are reasonable and adequate.

Order Setting Deposition

Plaintiff also seeks an order setting a deadline for defendant to provide deposition dates and setting an expert disclosure deadline 10 days after certain depositions have been set.  The court has denied the motion because of plaintiff's counsel's failure to meaningful confer.  But the court will say here that it is not inclined to require in-person appearance requiring long-distance travel without persuasive reasoning.

Plaintiff fails to include any argument in its brief to argue why it needs an order setting a deadline for depositions, which appears to be mainly focused on the deposition of plaintiff's direct supervisor, Waring Lester.[41]  Plaintiff has not addressed any of defendant's arguments by choosing not to file a reply.  From defendant's response and the parties' correspondence, plaintiff's counsel wants to go forward with Mr. Lester's deposition with the witness and plaintiff's counsel appearing live.

Defense counsel represents their firm is unable to travel to appear live due to COVID-19; their firm has discouraged travel and in-person depositions.[42]  The witness himself is uncomfortable appearing live in these conditions.[43]  Defendant argues it would

---

[40] ECF No. 72 at 8.

[41] ECF Nos. 69 & 70.

[42] ECF No. 72 at 14.

[43] *Id.* at 15.

be unfairly prejudicial to allow plaintiff's counsel and defendant's witness in the room to be live while defense counsel appears remotely.[44]

The court takes guidance from the Southern District of New York.  On June 4, 2020, Judge Valerie E. Caproni entered an order discussing in-person depositions.  Judge Caproni denied a request for in-person depositions, citing the ongoing risks of intrastate state travel and indoor congregation and ultimately stating "[t]he burden on the witnesses, in the form of potential exposure and infection for them and their families, needs no further elaboration."[45]  The court agrees with Judge Caproni's assessment that community spread and potential exposure remain ongoing concerns.

That said, this court is not bound by the Southern District of New York, and the conditions of New York are not necessarily equivalent to the conditions in Kansas and other states where the depositions in this case would take place.  Courts in this district have began to grapple with this issue, handling at least one motion for protective order to stay face-to-face depositions.[46]   Should plaintiff re-file a similar motion after adequately conferring with defendant, that order addresses the factors this court would likely use in its

---

[44] *Id.* at 8.

[45] *David A. Joffe v. King & Spalding LLP*, 1:17-cv-03392-VEC-SDA, Doc. 239 (S.D.N.Y June 4, 2020).

[46] *See Manley v. Bellendir*, No. 18-CV-1220-EFM-TJJ, 2020 WL 2766508 (D. Kan. May 28, 2020).

analysis.  Any subsequent motion should comprehensively address these factors rather than solely rely on the assertions in counsel's e-mail correspondence.

IT IS THEREFORE ORDERED that plaintiff's motion to compel (ECF No. 69) is denied.

Dated June 26, 2020, at Kansas City, Kansas.

 s/ James P. O'Hara
James P. O'Hara
U.S. Magistrate Judge